ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
————————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————

No. 15-3084
————————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

DEVON CLEVELAND HUNT,                    Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————————

CHANNING D. PHILLIPS
United States Attorney

ELIZABETH TROSMAN
GEORGE P. ELIOPOULOS
* JASON B. FELDMAN
D.C. Bar #1023334
Assistant United States Attorneys
* Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Jason.Feldman@usdoj.gov
(202) 252-6829

Cr. No. 13-306-1 (RWR)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, Devon Cleveland Hunt, and appellee, the United States of America. There are no intervenors or amici.

## Rulings Under Review

Appellant appeals the November 20, 2015, sentence imposed by the district court (the Honorable Richard W. Roberts) following his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. Appellant alleges that the district court procedurally and substantively erred in attaching a special condition to his five-year term of supervised release that restricted his post-incarceration access to the Potomac Gardens Housing Complex in Southeast Washington, D.C.

## Related Cases

Appellant's co-defendant, Torri Torran Washington, entered a plea of guilty in Criminal No. 13-306-2, and did not appeal.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the attached Addendum.

# TABLE OF CONTENTS

Page

COUNTERSTATEMENT OF THE CASE.............................................. 1

    Background.............................................................................3

        The Offense Conduct ..................................................3

        The Plea Agreement ...................................................7

        The Plea Hearing........................................................9

        Sentencing ...............................................................11

SUMMARY OF ARGUMENT...............................................................15

ARGUMENT .......................................................................................17

    I.    Appellant's Claims Are Barred by the Appeal-Waiver Provision in His Plea Agreement. ...........................................17

        A.   Standard of Review and Applicable Legal Principles........17

        B.   Discussion ........................................................18

    II.   The District Court Did Not Commit Plain Procedural Error in Imposing the Stay-Away Condition. ...........................22

        A.   Standard of Review and Applicable Legal Principles........22

        B.   The District Court Committed No Procedural Error.........23

        C.   In any Event, Appellant Cannot Show Plain Error...........30

III. The District Court Did Not Substantively Err in Imposing the Stay-Away Condition..........................................................32

    A.   Standard of Review and Applicable Legal Principles........32

    B.   Discussion ...........................................................................33

CONCLUSION .....................................................................................39

# TABLE OF AUTHORITIES*

Page

*Gall v. United States*, 552 U.S. 38 (2007) ..........................................22-23

*In re Sealed Case*, 527 F.3d 188 (D.C. Cir. 2008)
    ("*Sealed Case I*") ..........................................................22, 24

*In re Sealed Case*, 573 F.3d 844 (D.C. Cir. 2009)
    ("*Sealed Case II*") .........................................................23, 30

*New York Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070
    (D.C. Cir. 2007) ...............................................................35

*Rita v. United States*, 551 U.S. 338 (2007) ...........................................29

*United States v. Adams*, 780 F.3d 1182 (D.C. Cir. 2015) .................21-22

*United States v. Alexander*, 509 F.3d 253 (6th Cir. 2007) .....................37

*United States v. Aplicano-Oyuela*, 792 F.3d 416 (4th Cir. 2015) ......27-29

*United States v. Armel*, 585 F.3d 182 (4th Cir. 2009) ...........................25

*United States v. Balon,* 384 F.3d 38 (2d Cir. 2004) ................................31

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007) ............................26

*United States v. Brogdon*, 503 F.3d 555 (6th Cir. 2007).........................25

* *United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010) .............24, 30

*United States v. Carter*, 463 F.3d 526 (6th Cir. 2006)............................31

_____

\* Authorities upon which we chiefly rely are marked with asterisks.

vi

*United States v. Clark*, 726 F.3d 496 (3d Cir. 2013)..........................28-29

\* *United States v. Cochran*, 855 F.2d 749 (11th Cir. 1988) .................36-37

*United States v. Cunningham*, 145 F.3d 1385 (D.C. Cir. 1998) ............17

*United States v. Deatherage*, 682 F.3d 755 (8th Cir. 2012) ...................24

*United States v. Falor*, 800 F.3d 407 (7th Cir. 2015) .............................25

*United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008).................22

*United States v. Garrasteguy*, 559 F.3d 34 (1st Cir. 2009)...............25-26

*United States v. Godoy*, 706 F.3d 493 (D.C. Cir. 2013) ..........................19

\* *United States v. Guillen*, 561 F.3d 527 (D.C. Cir. 2009) ........17-18, 21-22

*United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) ....18-19

\* *United States v. Henry*, 819 F.3d 856 (6th Cir. 2016) ......................27, 29

*United States v. Johnsonmarin*, 501 F. App'x 651 (9th Cir. 2012) ........36

\* *United States v. Kaufman*, 791 F.3d 86 (D.C. Cir. 2015) .................18-21

*United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001)...........................19

*United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011)..........................30

*United States v. Legg*, 713 F.3d 1129 (D.C. Cir. 2013) ................32-33, 38

*United States v. Locke*, 664 F.3d 353 (D.C. Cir. 2011) ................22-23, 29

*United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013)................33, 38

*United States v. Martinez-Torres*, 795 F.3d 1233 (10th Cir. 2015) ........25

*United States v. Miller*, 594 F.3d 172 (3d Cir. 2010) .............................. 25

*United States v. Olano*, 507 U.S. 725 (1993) .................................... 23, 32

*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011) ............................ 25

*United States v. Ridgeway*, 319 F.3d 1313 (11th Cir. 2003) .................. 26

*United States v. Russell*, 600 F.3d 631 (D.C. Cir. 2010) ........................ 35

*United States v. Salazar*, 743 F.3d 445 (5th Cir. 2014) ........................... 25

*United States v. Shwaryk*, 448 F. App'x 106 (2d Cir. 2011) .................. 25

*United States v. Sicher*, 239 F.3d 289 (3d Cir. 2000) .............................. 37

*United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014) ................. 26-27, 31

*United States v. Snelson*, 555 F.3d 681 (8th Cir. 2009) .......................... 19

*United States v. Stanfield*, 360 F.3d 1346 (D.C. Cir. 2004) ................... 33

\* *United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006) ............... 27, 30

*United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015) .................... 27

\* *United States v. Watson*, 582 F.3d 974 (9th Cir. 2009) .............. 34, 36-37

*United States v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010) .................... 23-24

*United States v. Zobel*, 696 F.3d 558 (6th Cir. 2012) ........................ 27, 29

# OTHER AUTHORITIES

18 U.S.C. § 3553(a) ............................................................ 13, 22, 25, 27-29

18 U.S.C. § 3553(c) ............................................................... 22, 25, 29

18 U.S.C. § 3583(d) ........................................................................... 32

18 U.S.C. § 3583(d)(1) ....................................................................... 33

18 U.S.C. § 3583(d)(2) ....................................................................... 33

18 U.S.C. § 3583(d)(3) ....................................................................... 33

18 U.S.C. § 3742 ................................................................................. 8

21 U.S.C. § 841(a)(1) ........................................................................... 2

21 U.S.C. § 841(b)(1)(C) ..................................................................... 2

21 U.S.C. § 843(b) ................................................................................ 2

21 U.S.C. § 846 .................................................................................... 2

U.S.S.G. § 5D1.3(b) ........................................................................... 26

Fed. R. Crim. P. 11(c)(1)(C) ............................................................... 7

Fed. R. Crim. P. 32(i)(3)(A) ............................................................... 12

# ISSUES PRESENTED

I.     Whether appellant's claims are barred by his plea agreement, in which he waived his right to appeal his sentence, subject to exceptions not applicable here.

II.     Assuming the availability of appellate review, whether the district court committed plain procedural error in failing to adequately explain its reasons for attaching a particular special condition of supervised release to appellant's sentence, where: (1) the district court enumerated and applied all of the factors set forth in 18 U.S.C. § 3583(a) during a general statement of reasons that encompassed all aspects of appellant's sentence; (2) appellant cites no authority from this Court requiring a district court to separately state its reasons for imposing each special condition of supervised release at the sentencing hearing; and (3) appellant, in any event, did not suffer prejudice from the alleged error because the district court's reasons for imposing the special condition are readily apparent from the record (*i.e.*, the government's argument in favor of the condition and the Presentence Investigation Report).

III.   Assuming the availability of appellate review, whether the special condition requiring appellant to obtain the permission of his probation officer before entering the Potomac Gardens Housing Complex was substantively reasonable, where: (1) appellant acknowledged in connection with his guilty plea in this case that he maintained an apartment at Potomac Gardens for the sole purpose of distributing heroin; (2) the vast majority of appellant's criminal history also stems from conduct in and around Potomac Gardens; and (3) the special condition clearly and narrowly defines the restricted area as encompassing only a one-block radius around the housing complex.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 15-3084

_____

UNITED STATES OF AMERICA,                              Appellee,

v.

DEVON CLEVELAND HUNT,                              Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRIEF FOR APPELLEE

_____

## COUNTERSTATEMENT OF THE CASE

On November 7, 2013, a grand jury returned a seven-count indictment against appellant, Devon Cleveland Hunt, and his co-defendant, Torri Torran Washington (D.E. 1).[1] The indictment charged

_____

[1] "D.E." refers to the indicated docket entry in the district court. "J.A." refers to appellant's Joint Appendix. "S.A." refers to the government's Supplemental Appendix, which is filed with this brief. Finally, "8/13/15

(continued . . .)

appellant with one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin (21 U.S.C. § 846), four counts of unlawful distribution of heroin (21 U.S.C. §§ 841(a)(1), (b)(1)(C)), and one count of unlawful use of a communication facility (21 U.S.C. § 843(b)) (*id.*).

Pursuant to the terms of a plea agreement, on August 13, 2015, appellant pled guilty to the lead count of conspiracy before the Honorable Richard W. Roberts (S.A. 30-41; D.E. 121). On November 20, 2015, the district court sentenced appellant to 62 months' imprisonment and five years' supervised release (S.A. 131; 11/20/15 Tr. 29). The court also imposed certain special conditions on appellant's supervised-release term, and ordered appellant to pay a $100 special assessment (S.A. 131-33; 11/20/15 Tr. 29-31). On November 30, 2015, appellant timely noted this appeal (D.E. 147).

---

(. . . continued)

Tr." refers to the transcript of the August 13, 2015, plea hearing, and "11/20/15 Tr." refers to the transcript of the November 20, 2015, sentencing hearing. Both transcripts are part of the government's Supplemental Appendix.

# Background

## *The Offense Conduct*

The following facts are derived from the government's "Proffer of Evidence," which appellant admitted to in connection with his guilty plea in this case (S.A. 22-29; D.E. 120). Starting on or before December 2012, and continuing until February 2013, appellant used and maintained an apartment inside the Potomac Gardens Housing Complex ("Potomac Gardens"), located at 714 12th Street, Southeast, Washington, D.C., for the sole purpose of distributing heroin (S.A. 23). Appellant used the apartment as his "base of operations"; he did not actually reside there at any point during the conspiracy (*id.*).

On December 10, 2012, appellant's co-defendant, Torri Washington, provided a confidential source ("CS-1") with a small sample of heroin (S.A. 23). Washington informed CS-1 that additional quantities of the same heroin could be purchased for $90 a gram from "Man," an individual later identified as appellant (*id.*). Later that same day, CS-1 called Washington and scheduled a heroin deal for the following day (*id.*).

On December 11, 2012, CS-1 picked up Washington and drove him to the 1200 block of I Street Southeast, Washington, D.C. (S.A. 23-24). After they arrived, CS-1 gave Washington $1,800 in prerecorded funds (*id.* at 23-24). Washington accepted the money, exited CS-1's vehicle, and entered appellant's Potomac-Gardens apartment (*id.* at 24). A short time later, Washington returned to CS-1's vehicle and provided CS-1 with a plastic bag containing approximately 20 grams of heroin (*id.*). Washington obtained the heroin from appellant (*id.*).

On December 18, 2012, CS-1 made arrangements with Washington to purchase 30 grams of heroin from appellant (S.A. 24). On December 19, 2012, CS-1 picked up Washington and drove him to Potomac Gardens (*id.*). After they arrived, CS-1 provided Washington with $2,700 in prerecorded funds, and Washington took the money to appellant's apartment (*id.*). While CS-1 was waiting in the car, CS-1 received a phone call from appellant, who identified himself as "Man" (*id.*). Appellant told CS-1 that he could not fulfill CS-1's order at the moment because he had been unable to meet up with his suppliers (*id.*). Nevertheless, appellant assured CS-1 that they would complete the transaction at a later date (*id.*).

On January 25, 2013, CS-1 drove Washington to Potomac Gardens so that Washington could facilitate the heroin purchase that CS-1 and appellant had discussed previously (S.A. 24-25). Once they arrived, Washington entered appellant's apartment and returned to CS-1's vehicle a short time later with a plastic bag containing a small amount of heroin (*id.* at 25). According to Washington, appellant had received the heroin from a new supplier (*id.*).

Three days later, on January 28, 2013, CS-1, Washington, and appellant all met together at Potomac Gardens to complete the purchase (S.A. 25). After several delays, CS-1 drove Washington and appellant to a parking lot in Forestville, Maryland, where appellant briefly met with an individual in a black Toyota minivan (*id.*). When appellant returned to CS-1's vehicle, he provided CS-1 with approximately 40 grams of heroin (*id.*).

On February 5, 2013, CS-1 was provided with $5,400 in prerecorded funds to purchase 60 grams of heroin from appellant and Washington (S.A. 26). As CS-1 had done on previous occasions, CS-1 picked up Washington and drove him to Potomac Gardens to meet with appellant (*id.*). After a two-hour delay during which CS-1, Washington,

and appellant were all inside appellant's apartment, CS-1 eventually drove appellant and Washington to two different locations in Maryland (*id.*). On the return trip to Potomac Gardens, appellant informed CS-1 that his suppliers did not have 60 grams of heroin for sale at that time (*id.*).

On February 9, 2013, CS-1 drove to Potomac Gardens to purchase 60 grams of heroin directly from appellant (S.A. 26). After observing CS-1 arrive, appellant exited his apartment and approached CS-1's vehicle (*id.*). CS-1 handed appellant $5,400 in prerecorded funds, at which point appellant accepted the money and walked away from CS-1's vehicle (*id.* at 26-27). A short time later, appellant motioned for CS-1 to follow him to the entrance of one of the Potomac-Gardens buildings (*id.* at 27). There, appellant gave CS-1 a plastic bag containing approximately 56 grams of heroin (*id.*). Appellant returned $400 to CS-1 after explaining that the plastic bag contained only 56 grams of heroin rather than the 60 grams that the two had previously discussed (*id.*).

On November 12, 2013, appellant was arrested in Fort Washington, Maryland following a traffic stop (S.A. 27). During a search incident to arrest, police recovered approximately 12 grams of

heroin from appellant's person (*id.*). On that same day, law enforcement executed a search warrant at appellant's Potomac-Gardens apartment and recovered evidence of drug trafficking and mail matter linking appellant to the apartment (*id.*).

### *The Plea Agreement*

On August 13, 2015, after extensive plea negotiations that lasted well over a year, the parties entered into a formal plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (S.A. 30-41; D.E. 121). The basic terms of the agreement were that, in exchange for appellant's guilty plea to conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, the government would voluntarily dismiss the remaining counts in the indictment and agree to a sentencing range of 60-65 months' imprisonment and five years' supervised release (S.A. 30-31). In addition to these terms, the agreement stated that the district court retained its authority to "impose other applicable statutory provisions as part of the sentence, including specifically fines and other conditions of supervised release" (*id.* at 31). The agreement also contained a provision under which appellant agreed to waive most of his appellate rights:

7

Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. *Your client agrees to waive the right to appeal the sentence in this case, including any* term of imprisonment, fine, forfeiture, award of restitution, *term of supervised release*, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court or your client claims that your client received ineffective assistance of counsel, in which case your client would have the right to appeal the illegal sentence or above-guidelines sentence or raise on appeal a claim of ineffective assistance of counsel, but not to raise on appeal other issues regarding the sentencing. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. (S.A. 37) (emphasis added.).

All parties, including appellant and his counsel, signed and executed the agreement (S.A. 40-41). By his signature, appellant acknowledged that he had read "every page" of the agreement and discussed the same with counsel (*id.* at 41). He further acknowledged that he was entering into the plea contract "without reservation" and with a "full[] understanding" of its terms (*id.*).

8

### *The Plea Hearing*

At the August 13, 2015, plea hearing, the government read the factual basis for appellant's plea into the record, and appellant verbally affirmed that the proffer was an "accurate description" of his criminal conduct in this case (S.A. 50-62, 66-67; 8/13/15 Tr. 9-21, 25-26). The court then engaged in a standard Rule-11 colloquy to ensure that appellant understood the various consequences flowing from his decision to plead guilty (S.A. 67-76; 8/13/15 Tr. 26-35).

During the plea colloquy, the court reviewed appellant's various constitutional rights, and confirmed his understanding that, by pleading guilty, he would be waiving most of those rights (S.A. 67-76; 8/13/15 Tr. 26-35). However, in discussing the effect that appellant's guilty plea would have on his right to appeal, the court used language that imprecisely described the scope of rights appellant would retain under the plea agreement (S.A. 72-73; 8/13/15 Tr. 31-32). Specifically, the court stated that, although appellant "would be generally giving up [his] rights to appeal," he "may . . . have a right to appeal or challenge [his] sentence . . . if [he] think[s] the sentence is illegal or it exceeds the applicable Sentencing Guidelines range or resulted from ineffective

9

assistance of counsel, or if [he] assert[s] any newly discovered evidence"
(S.A. 72; 8/13/15 Tr. 31). Notwithstanding this explanation, appellant
affirmed his understanding that, by pleading guilty, he would be
"giv[ing] up most of [his] rights to an appeal" (S.A. 73; 8/13/15 Tr. 32).

Once the court was satisfied that appellant understood the
general consequences of pleading guilty, the court turned, for the first
time, to the specific provisions of the plea agreement (S.A. 76-82;
8/13/15 Tr. 35-41). In response to the court's inquiries, appellant
acknowledged that he had "carefully read" the plea agreement and
discussed its terms with counsel (S.A. 77; 8/13/15 Tr. 36). He also
acknowledged that the agreement accurately reflected his "entire
understanding[]" of the bargain he had struck with the government
(S.A. 79-80; 8/13/15 Tr. 38-39). Despite appellant's assurances, the court
reviewed the agreement's most significant terms with appellant before
accepting his guilty plea (S.A. 81-92; 8/13/15 Tr. 40-51). The appeal-
waiver provision was one of the terms that the court highlighted:

> THE COURT: Under this plea agreement, you are giving up
> your right to challenge or appeal your conviction and
> challenge the sentence I impose, unless you claim newly
> discovered evidence or ineffective assistance of counsel, or
> you claim the sentence exceeds the statutory maximum or
> the applicable Sentencing Guidelines Range.

Do you understand that, Mr. Hunt?

DEFENDANT HUNT: Yes, Your Honor (S.A. 92; 8/13/15 Tr. 51).

Although the court's second description of the appeal-waiver provision differed from its earlier statements describing the circumstances in which appellant could challenge his sentence in the wake of his guilty plea, appellant did not express any confusion regarding the waiver provision or the scope of his appellate rights under the plea agreement (S.A. 92; 8/13/15 Tr. 51). Instead, appellant went forward with his decision to plead guilty (S.A. 96; 8/13/15 Tr. 55). The court, in turn, deferred its decision on whether to accept the parties' plea agreement until the sentencing hearing (S.A. 97; 8/13/15 Tr. 56).

### *Sentencing*

At the November 20, 2015, sentencing hearing, the district court accepted the terms of the parties' plea agreement and solicited any objections to appellant's Presentence Investigation Report ("PSR") (S.A. 105-07; 11/20/15 Tr. 3-5). After appellant's counsel indicated that the PSR contained "no material inaccuracies," the court accepted "all the undisputed portions of the presentence report[] as finding[s] of fact"

11

pursuant to Federal Rule of Criminal Procedure 32(i)(3)(A) (S.A. 107; 11/20/15 Tr. 5).

During allocution, the government requested – as it did in its November 10, 2015, sentencing memorandum (D.E. 136 at 9) – that the court require appellant to stay away from Potomac Gardens as a special condition of his five-year term of supervised release (S.A. 117-18; 11/20/15 Tr. 15-16). The stay-away condition was appropriate, the government argued, because "[v]irtually every crime for which [appellant] has been convicted . . . has occurred" at Potomac Gardens (S.A. 117; 11/20/15 Tr. 15). As examples, the government cited appellant's 1988 conviction for attempted possession of heroin, his 1990 conviction for simple assault, and his 1997 conviction for conspiracy to distribute heroin (*id.*). The government also noted an incident in 2009 in which appellant was found in the exact same Potomac-Gardens apartment that he utilized in this case by MPD's major narcotics task force during the execution of a search warrant (*id.*).

Appellant's counsel opposed the stay-away condition (S.A. 125-26; 11/20/15 Tr. 23-24). Counsel contended that the proposed condition was "inappropriate" because it would preclude appellant from entering "a

12

particular[ly] large area of town," and therefore impermissibly interfere with his freedom of movement and association (S.A. 126; 11/20/15 Tr. 24). Counsel further noted that appellant had lived in Potomac Gardens in the past, and thus knew several people there "who have nothing to do with drugs or illegal activity" (*id.*). Finally, counsel argued that the special condition was unnecessary because the general conditions of release already prohibited appellant from engaging in illegal activities (*id.*).

In response, the government noted that appellant had "committed a lot of criminal activity in the Potomac Gardens area," and that the special condition was therefore necessary "to preclude [appellant from committing] further criminal activity" at Potomac Gardens (S.A. 127; 11/20/15 Tr. 25). The government also argued that the condition was appropriately limited in scope because it only required appellant to stay away from "a very finite part of town" – *i.e.*, an area encompassing no more than "an extra block around the Potomac Gardens apartment complex" (*id.*).

Before announcing appellant's sentence, the district court enumerated the factors set forth in 18 U.S.C. § 3553(a), and applied

13

those factors to the facts and circumstances of appellant's case (S.A. 128-31; 11/20/15 Tr. 26-29). In outlining its reasons for appellant's "sentence," the court noted that appellant had a "long and dangerous histor[y] of getting in trouble with the law," and had admitted in connection with his guilty plea in this case to "spreading lots of poison that ha[d] crippled our community" (S.A. 128-29; 11/20/15 Tr. 26-27). The court also expressed its hope that appellant's sentence would help him become a "role model[] for [his] family and for [his] communit[y]" instead of "a danger to them" (S.A. 130; 11/20/15 Tr. 28).

Ultimately, the court sentenced appellant to 62 months' imprisonment and five years' supervised release (S.A. 131; 11/20/15 Tr. 29). As relevant here, the court also imposed the following special condition on appellant's supervised-release term:

> [W]ithout the prior approval of the U.S. Probation Office, you shall not enter the grounds of the Potomac Gardens housing complex area in Southeast Washington, D.C., or any structure in it, as bounded by the areas of Pennsylvania Avenue, Southeast, to the north; 14th Street, Southeast, to the east; K Street, Southeast, to the south; and 11th Street, Southeast, to the west (S.A. 133; 11/20/15 Tr. 31).

After announcing its sentence, the district court reminded appellant that he had a right to appeal only "if the period of

14

imprisonment is longer than the statutory maximum, or the sentence departs upward from the applicable Sentencing Guidelines range" (S.A. 134; 11/20/15 Tr. 32; see also J.A. 27 (containing identical language)). The court then asked the parties whether there were "any other matters we need to take up" (S.A. 134-35; 11/20/15 Tr. 32-33). Although appellant had opposed the stay-away condition on substantive-reasonableness grounds during allocution, appellant did not object to the adequacy of the district court's explanation or the court's alleged failure to make explicit factual findings in support of the stay-away condition (S.A. 135; 11/20/15 Tr. 33). Instead, appellant's counsel responded: "I don't believe so, sir" (*id.*).

## SUMMARY OF ARGUMENT

In his plea agreement, appellant waived his right to litigate the claims of procedural and substantive error that he presents here. Although the district court initially suggested during the plea hearing that appellant could appeal any illegal sentence, the court's error did not invalidate the waiver; the court correctly advised appellant regarding the waiver later on in the colloquy, and neither appellant nor

his counsel expressed any confusion regarding the discrepancy between the court's two explanations.

In any event, appellant's claims fail on their merits. The district court's general statement of reasons encompassed both the incarceration sentence and the special condition of supervised release, and was therefore sufficient to satisfy its procedural obligations. To the extent this Court disagrees, appellant does not even attempt to meet the additional requirements of plain-error review occasioned by his failure to raise his procedural objection before the district court.

Appellant's substantive challenge is similarly unavailing. The record reveals that appellant has spent the majority of his adult life either committing crimes at Potomac Gardens, or incarcerated for committing crimes at Potomac Gardens. A special condition restricting appellant's post-incarceration access to Potomac Gardens is, therefore, reasonably related to his history and characteristics, and is likely to reduce his risk of recidivism, promote his rehabilitation, and protect the public.

# ARGUMENT

## I. Appellant's Claims Are Barred by the Appeal-Waiver Provision in His Plea Agreement.

### A. Standard of Review and Applicable Legal Principles

This Court has held that a "defendant may waive his right to appeal his sentence as long as his decision is knowing, intelligent, and voluntary." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). For the waiver to be valid, the record must show that the defendant "'[knew] what he [was] doing and [made] his choice . . . with eyes open.'" *Id.* at 530 (quoting *United States v. Cunningham*, 145 F.3d 1385, 1391 (D.C. Cir. 1998)). "An anticipatory waiver – that is, one made before the defendant knows what the sentence will be – is nonetheless a knowing waiver if the defendant is aware of and understands the risks involved in his decision." *Id.* at 529.

This Court will not enforce a waiver "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *Id.* at 530. Similarly, the Court may also decline to enforce a waiver if the district court fundamentally mischaracterizes the scope of the waiver provision

17

during the defendant's plea colloquy. *See, e.g.*, *United States v. Kaufman*, 791 F.3d 86, 88 (D.C. Cir. 2015).

The Court reviews the validity of a waiver provision de novo. *Guillen*, 561 F.3d at 531.

## B.   Discussion

By entering into the plea agreement, appellant waived the claims he now presses on appeal. Specifically, appellant agreed "to waive the right to appeal the sentence in this case, including any . . . term of supervised release," subject to only three exceptions: (1) imposition of a sentence above the statutory maximum; (2) imposition of a sentence above the applicable Guidelines range; and (3) a claim that he received ineffective assistance of counsel (S.A. 37). On appeal, appellant does not contend that any of these exceptions to his appeal waiver apply. Instead, he argues that the district court procedurally and substantively erred in imposing a particular special condition of supervised release (Appellant's Br. 1, 7-24).

Appellant fails to even mention the appeal-waiver provision in his opening brief, much less demonstrate a compelling reason why it should not be enforced. *See United States v. Hahn*, 359 F.3d 1315, 1329 (10th

Cir. 2004) (en banc) (defendant bears the burden of demonstrating that his waiver was not knowing and voluntary); *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) ("To avoid dismissal of appeal, Defendant must show why we should not enforce the waiver provision of the plea agreement.") (internal quotation marks and citation omitted).[2] Still, the government acknowledges that the language the district court used in initially describing appellant's post-guilty-plea-appellate options resembles language which this Court has previously found to be "problematic" in the appeal-waiver context. *See Kaufman*, 791 F.3d at 88 (citing *United States v. Godoy*, 706 F.3d 493, 494-96 (D.C. Cir. 2013)). However, when the plea transcript is viewed in its totality, it is clear that the error that ultimately caused the Court to invalidate the appeal waiver in *Kaufman* is not present here.

---

[2] *But see United States v. Snelson*, 555 F.3d 681, 685 (8th Cir. 2009) ("The government bears the burden of establishing (1) that the appeal is clearly and unambiguously within the scope of the waiver, (2) that the defendant entered into the waiver knowingly and voluntarily, and (3) that dismissing the appeal based on the defendant's waiver would not result in a miscarriage of justice.") (internal quotation marks and citation omitted).

In *Kaufman*, the Court declined to enforce an appeal-waiver provision after the district court made two erroneous statements regarding the effect of the waiver provision at the plea hearing. *Id.* Specifically, the court first told the defendant that he could appeal "if he believed the sentence [was] illegal," and later told the defendant that he could appeal under certain circumstances if he "did not like the sentence." *Id.* (internal quotation marks and citation omitted, alterations removed). This Court reasoned that enforcing the waiver under these circumstances would be inappropriate because the sentencing judge's statements left the defendant with the mistaken impression that he could appeal "any illegal sentence." *Id.* (internal quotation marks and citation omitted).

Here, in contrast, although the district court initially made a statement suggesting that appellant could appeal "if [he] think[s] the sentence is illegal" (S.A. 72; 8/13/15 Tr. 31), the court clarified its remark a short time later by correctly advising appellant:

> Under this plea agreement, you are giving up your right to challenge or appeal your conviction and challenge the sentence I impose, unless you claim newly discovered evidence or ineffective assistance of counsel, or you claim the sentence exceeds the statutory maximum or the applicable Sentencing Guidelines Range (S.A. 92; 8/13/15 Tr. 51).

20

Following this statement, appellant did not express any confusion regarding his rights under the plea agreement, and in fact repeatedly affirmed his understanding that he would be "giv[ing] up most of [his] rights to an appeal" by pleading guilty (S.A. 72-73, 92; 8/13/15 Tr. 31-32, 51). Thus, unlike in *Kaufman*, the district court's statements did not leave appellant with the false impression that he could appeal any illegal sentence.

None of the other limited exceptions to enforceability delineated in *Guillen* or its progeny cast the enforceability of the waiver into doubt. Appellant has not alleged that the district court sentenced him based on "a constitutionally impermissible factor, such as [his] race or religion." *See Guillen*, 561 F.3d at 531. Nor has appellant identified a procedural error of such significance that it rendered his entire sentence a "miscarriage of justice." *Id.* at 531; *see also United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015) (noting that the miscarriage-of-justice exception is "very narrow" and limited to the "examples identified in *Guillen*" and "comparably serious procedural failure[s]"). Accordingly, the Court should enforce the appeal-waiver provision – which was part of the bargain appellant struck with the government – and decline to

21

reach the merits of appellant's sentencing claims. *See Guillen*, 561 F.3d at 530-31; *Adams*, 780 F.3d at 1184.

## II.   The District Court Did Not Commit Plain Procedural Error in Imposing the Stay-Away Condition.

### A.   Standard of Review and Applicable Legal Principles

A district court's sentence may be challenged for significant procedural errors. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Gardellini*, 545 F.3d 1089, 1094 n.6 (D.C. Cir. 2008). One such error occurs when a district court fails to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c); *see also In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) ("*Sealed Case I*"). Although the "degree of explanation required depends on the circumstances," it is clear that "a district judge need not consider every § 3553(a) factor" to comply with its procedural obligations. *Sealed Case I*, 527 F.3d at 191. As long as the record contains a "reasoned basis" for the judge's decision, this Court "generally presume[s] that [the judge] adequately considered the arguments and will uphold the sentence if it is otherwise reasonable." *United States v. Locke*, 664 F.3d

353, 354, 357-58 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

Properly preserved procedural-error arguments are subject to review for abuse of discretion. *Gall*, 552 U.S. at 51. However, when "a defendant fail[s] to make a timely objection to the alleged procedural error in the district court, [this Court's] review is for plain error." *United States v. Wilson*, 605 F.3d 985, 1034 (D.C. Cir. 2010). To prevail on plain-error review, the defendant must show (1) error, (2) that is plain or clear, and (3) that affects substantial rights; if the defendant meets this burden, then the Court may exercise its discretion to reverse if the error (4) seriously affects the fairness, integrity or public reputation of judicial proceedings. *See In re Sealed Case*, 573 F.3d 844, 847 (D.C. Cir. 2009) ("*Sealed Case II*") (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

## B.   The District Court Committed No Procedural Error.

Appellant argues that the district court procedurally erred in failing to adequately state its reasons for imposing the stay-away condition as a term of his supervised release. Because appellant did not challenge the adequacy of the district court's explanation at the

23

sentencing hearing, this Court reviews his procedural claim for plain error. *See Wilson*, 605 F.3d at 1034; *see also Sealed Case I*, 527 F.3d at 191-92 (applying plain-error review where the defendant "did not object to the district judge's failure to explain his reasons either orally or in writing"); *accord United States v. Deatherage*, 682 F.3d 755, 763 (8th Cir. 2012) ("A general objection at sentencing to the substantive restriction imposed by a special condition is not enough to preserve an allegation that the court did not adequately explain its specific reasons for imposing the special condition.").

In his opening brief, appellant treats his procedural claim as arising under settled law (Appellant's Br. 11-15). However, this Court has never squarely addressed whether (and if so, to what extent) a district court must place its reasons for imposing a special condition of release on the record during the sentencing hearing. *See United States v. Burroughs*, 613 F.3d 233, 248-49 (D.C. Cir. 2010) (Brown, J., dissenting) (characterizing such a requirement as "far from clear" under then-existing D.C. Circuit case law).

Courts that have opined on this issue have reached different conclusions. Based on the assumption that conditions of supervised

24

release are part of a defendant's "sentence" under 18 U.S.C. § 3553(c), a majority of circuits hold that a district court must state "in open court at the time of sentencing its rationale for mandating special conditions of supervised release." *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (internal quotation marks and citation omitted); *see also United States v. Falor*, 800 F.3d 407, 411 (7th Cir. 2015) ("[D]istrict courts committed procedural error in imposing discretionary conditions of supervised release without considering the § 3553(a) factors and explaining why those factors supported the imposition of the conditions.").[3]

However, a significant minority of circuits have reached the opposite conclusion. Specifically, the First, Ninth, and Eleventh Circuits have all held that a district court need not expressly state its reasons for imposing a special condition of release so long as its reasons can be discerned from the record. *See United States v. Garrasteguy*, 559 F.3d

---

[3] *Accord United States v. Shwaryk*, 448 F. App'x 106, 108 (2d Cir. 2011); *United States v. Miller*, 594 F.3d 172, 184 (3d Cir. 2010); *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009); *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014); *United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011); *United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015).

34, 42 (1st Cir. 2009) (district court's procedural obligations with respect to special conditions of release "can be satisfied without a written or oral explanation of the reasons supporting the condition if [the appellate court] can infer the court's reasoning by comparing what was argued by the parties or contained in the pre-sentence report with what the court did"); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) ("Circuit law establishes that a sentencing judge is not required to articulate on the record at sentencing the reasons for imposing each condition of supervised release, where we can determine from the record whether the court abused its discretion.") (internal quotation marks and citation omitted); *United States v. Ridgeway*, 319 F.3d 1313, 1317 (11th Cir. 2003) (district court need not state its reasons for imposing a special condition of release "where the condition being imposed is clear and undisputed facts contained in the Presentence Investigation Report ('PSI') support the condition under a § 5D1.3(b) analysis").

Given appellant's failure to preserve his procedural claim and the application of plain-error review, the Court should decline appellant's invitation to adopt the "best practices" articulated by the Seventh Circuit in *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014), as a set

of mandatory procedures that courts must follow in every case when imposing special conditions of supervised release (Appellant's Br. 13-14). *See United States v. Sullivan*, 451 F.3d 884, 893 (D.C. Cir. 2006) (declining the defendant's invitation to "broadly embrace the logic of [a non-controlling authority] in a case in which review is controlled by the plain error standard"). This is especially true given that the "best practices" appellant asks this Court to "require" are not even required in the very circuit that initially articulated them. *See United States v. Thompson*, 777 F.3d 368, 377 (7th Cir. 2015) (expressly observing that, in terms the procedures discussed in *Siegel*, a "'best practice' . . . is different from a required practice").

In any event, even assuming that the majority approach were to apply here, the district court's general statement of reasons would still be sufficient because "a discussion of the § 3553(a) factors that satisfies the procedural reasonableness requirement for imposing a term of incarceration can show that attachment of special conditions was also procedurally reasonable." *United States v. Henry*, 819 F.3d 856, 874 (6th Cir. 2016) (citing *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012)); *accord United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th

Cir. 2015) ("A court's sentencing rationale . . . can support both imprisonment and supervised release"); *United States v. Clark*, 726 F.3d 496, 501 (3d Cir. 2013) ("[W]e have never required that a district court conduct two § 3553(a) analyses, one related to the term of imprisonment and a second related to the term of supervised release.").

Before announcing its sentence, the district judge enumerated all of the § 3553(a) factors and discussed how each of them informed its decision in this case. As relevant here, the court noted that appellant had a "long and dangerous histor[y] of getting in trouble with the law," which, as the government had made clear just moments before, derived almost entirely from conduct in and around Potomac Gardens (S.A. 129; 11/20/15 Tr. 27). The court further observed that selling drugs was "all that [appellant] knew how to do [from] early on," and that his actions in "spreading lots of poison" throughout Washington, D.C. had "crippled [the] community" (S.A. 128; 11/20/15 Tr. 26). Finally, the court expressed hope that appellant's sentence would assist him "now . . . and later" in becoming a role model for his family and community (S.A. 130; 11/20/15 Tr. 28). Although the court made these remarks in the context of justifying appellant's sentence as a whole, these same statements

28

provide a "reasoned basis" for the court's decision to restrict appellant's post-incarceration access to Potomac Gardens – that is, to reduce appellant's risk of recidivism, protect the public, and to promote appellant's rehabilitation. *See Locke*, 664 F.3d at 357-58.

Thus, appellant's contention that the district court imposed the condition "without any reasoned explanation whatsoever" is unpersuasive (Appellant's Br. 15). To be sure, the court engaged in only one analysis of the § 3553(a) factors, and did not specifically reference the stay-away condition when outlining its overarching rationale for appellant's "sentence." But the court was not required to separately justify every component of its sentence in order to comply with its procedural obligations under 18 U.S.C. § 3553(c). *See Henry*, 819 F.3d at 874; *Aplicano-Oyuela*, 792 F.3d at 425; *Clark*, 726 F.3d at 501; *Zobel*, 696 F.3d at 572. The fact that the court "might have said more" is not a reason to vacate the special condition of release. *Cf. Rita v. United States*, 551 U.S. 338, 358-59 (2007) (affirming district judge's "brief but legally sufficient" statement of reasons for the defendant's within-Guidelines sentence).

## C.   In any Event, Appellant Cannot Show Plain Error.

Even assuming the district court's explanation for the stay-away condition was inadequate, appellant's procedural claim still fails because he cannot establish any of the remaining prongs of plain-error review. *See, e.g.*, *Sullivan*, 451 F.3d at 896 (rejecting argument that the district court's failure to "substantiate" certain terms of supervised release constituted plain error).

As noted above, it is "far from clear" that district courts in this Circuit are even required to justify conditions of supervised release in the same or similar manner as is required to justify a sentence of imprisonment. *See Burroughs*, 613 F.3d at 248-49 (Brown, J., dissenting); *see also United States v. Laureys*, 653 F.3d 27, 32 (D.C. Cir. 2011) ("Rarely do we find an error to be plain where 'this [C]ourt has not ruled on the question.'") (citation omitted). The fact that other circuits are split on the issue only underscores the lack of "obvious" or "plain" error. *See Sealed Case II*, 573 F.3d at 851 ("[A] division of authority on a given point may provide cause to question the plainness of an error.").

Moreover, appellant does not even attempt to articulate how the district court's sparse explanation prejudiced him. This is unsurprising, as even in those circuits that require district courts to explain their reasons for imposing a particular condition of release, a district court's failure to abide by this requirement is considered harmless error where the basis for the condition is "self-evident in the record." *See United States v. Balon,* 384 F.3d 38, 41 n.1 (2d Cir. 2004); *accord United States v. Carter*, 463 F.3d 526, 530 n.2 (6th Cir. 2006); *Siegel*, 753 F.3d at 713.

In this case, the district court's reasons for imposing the stay-away condition are clear from the record. Both in its November 10, 2015, sentencing memorandum, and at the sentencing hearing, the government cited appellant's lengthy history of committing crimes at Potomac Gardens as the basis for its request for the stay-away condition (S.A. 117-18, 127; 11/20/15 Tr. 15-16, 25; see also D.E. 136 at 9, 11). When appellant's counsel challenged the condition as overbroad, the government noted that appellant would only be prohibited from entering "a very finite part of town" – *i.e.*, "approximately an extra block around the Potomac Gardens apartment complex" (S.A. 127; 11/20/15 Tr. 25). In granting the government's request, the district judge clearly

31

accepted the government's arguments, and rejected appellant's counter-arguments. Thus, even assuming the district court technically erred in failing to reiterate the government's arguments before announcing appellant's sentence, the error does not affect this Court's ability to conduct meaningful appellate review. Accordingly, appellant cannot demonstrate any prejudice, much less that the district court's error impugned the fairness, integrity, or public reputation of the judicial proceedings. *See Olano*, 507 U.S. at 732.

## III. The District Court Did Not Substantively Err in Imposing the Stay-Away Condition.

### A. Standard of Review and Applicable Legal Principles

Pursuant to 18 U.S.C. § 3583(d), a district court may impose any condition "it considers to be appropriate" as a term of a defendant's supervised release provided the condition meets the following three statutory requirements. First, the condition must be "reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs." *United States v. Legg*, 713 F.3d 1129, 1131 (D.C. Cir. 2013)

(internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3583(d)(1). Second, the "condition . . . must entail 'no greater deprivation of liberty than is reasonably necessary' to provide adequate deterrence, to protect the public, and to meet the defendant's vocational and medical needs." *United States v. Stanfield*, 360 F.3d 1346, 1353 (D.C. Cir. 2004) (quoting 18 U.S.C. § 3583(d)(2)). Finally, the "condition[] must also be consistent with pertinent policy statements issued by the United States Sentencing Commission." *Legg*, 713 F.3d at 1131 (citing 18 U.S.C. § 3583(d)(3)).

Notwithstanding these requirements, district courts are afforded "wide discretion" in fashioning special conditions. *Id.* Where, as here, the condition was imposed over the defendant's objection, this Court reviews the district court's decision for an abuse of discretion. *See United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013).

## B.   Discussion

The district court did not abuse its discretion in imposing the stay-away condition. As noted above, appellant has been committing crimes at Potomac Gardens since he was 18 years old (D.E. 43 at 9-10). Although there is a gap in appellant's criminal history (from 1997 to

33

2013), appellant spent approximately nine of those years in prison after pleading guilty to conspiring to distribute heroin at Potomac Gardens (*id.* at 9-11). Just a few years after he was released from prison on that conviction, appellant was found in a Potomac-Gardens apartment by MPD narcotics officers during the execution of a search warrant (*id.* at 10-11). Three years after this incident, he was arrested for, and ultimately pled guilty to, using this exact same apartment as a "base of operations for the sole purpose of distributing heroin" (S.A. 23).[4] Given this timeline, it is not an exaggeration to say that appellant has spent the vast majority of his adult life either committing crimes at Potomac Gardens, or incarcerated for committing crimes at Potomac Gardens. The stay-away condition, therefore, is reasonably related to reducing appellant's risk of recidivism, protecting the public, and promoting his rehabilitation. *See, e.g.*, *United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009) ("Separating a convicted felon from negative influences in his

---

[4] For a complete account of appellant's criminal history and his corresponding terms of incarceration, the Court may consult pages 11-19 of the PSR.

prior life is reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release.").

The condition is also narrowly tailored so as to restrict no more of appellant's liberty than is absolutely necessary. The district court limited the geographical restriction to a one-block radius around Potomac Gardens (S.A. 133; 11/20/15 Tr. 31). Moreover, the condition allows appellant to visit Potomac Gardens so long as he first seeks and obtains the permission of his probation officer (*id.*). *Cf. United States v. Russell*, 600 F.3d 631, 638 (D.C. Cir. 2010) (observing that special conditions that are "subject to relaxation by the probation officer" are more likely to be upheld). Given these limitations, there is no basis to conclude that the stay-away condition is overbroad. Appellant all but concedes this point on appeal, as his brief contains just a single conclusory assertion to the contrary (Appellant's Br. 15). *See New York Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.") (internal quotation marks and citation omitted).

35

Finally, appellant did not argue below, and does not contend on appeal, that the stay-away condition impedes any pertinent policy of the United States Sentencing Commission.

As appellant acknowledges, other courts have upheld geographical conditions far more onerous than the one at issue here. For example, the Eleventh Circuit upheld a condition requiring a convicted drug-dealer, who was especially popular among high school students, to "stay out of Fulton County, Georgia for the first two years of his probation unless he received the permission of his probation officer." *United States v. Cochran*, 855 F.2d 749, 750, 753 (11th Cir. 1988). Similarly, the Ninth Circuit affirmed a condition requiring a convicted carjacker and member of the Eddy-Rock gang to stay out of San Francisco during his three years of supervised release absent the permission of his probation officer. *Watson*, 582 F.3d at 977, 981-85; *see also United States v. Johnsonmarin*, 501 F. App'x 651, 652-53 (9th Cir. 2012) (relying on *Watson* to uphold a nearly identical condition). Finally, the Third Circuit upheld a special condition, albeit on plain-error review, prohibiting the defendant from entering Lehigh and Northampton counties, in Pennsylvania, without the prior permission of a probation

officer. *United States v. Sicher*, 239 F.3d 289, 289 (3d Cir. 2000); *see also United States v. Alexander*, 509 F.3d 253, 257 (6th Cir. 2007) (approving special condition requiring the defendant to live, for a period of 12 months, in a city hundreds of miles away from the Indian community where he had grown up and had committed several alcohol-related offenses; condition was reasonable because defendant had already violated "the more limited restriction" barring him from entering the community absent the permission of his probation officer).

To distinguish these cases, appellant downplays the connection between his criminal history and Potomac Gardens, even going so far as to claim that there is "no meaningful relationship" between the two (Appellant's Br. 20, 23). But, contrary to appellant's contention, Potomac Gardens did not "just happen[] to be the locus of the [instant] offense" (*id.* at 23). It was also the locus of appellant's 1988 conviction for attempted possession of heroin, his 1990 conviction for simple assault, his 1997 conviction for conspiracy to distribute heroin, and his 2009 arrest for unlawful entry (S.A. 117; 11/20/15 Tr. 15). Thus, like the special conditions in *Cochran*, *Watson*, and *Sicher*, the stay-away condition here was supported by specific facts suggesting that appellant

is more likely to reoffend if given unrestricted access to Potomac Gardens.

To the extent appellant argues that the stay-away condition is substantively unreasonable because the government cannot prove that, "but for the location [of the offense], the criminal activity would never have occurred," his argument fails (Appellant's Br. 23). *Cf. Malenya*, 736 F.3d at 560 (rejecting the government's attempt to use "but-for causation" as a proxy for the reasonableness of a special condition of supervised release). For the government to prevail on appeal, the condition need only be "reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs." *Legg*, 713 F.3d at 1131.

Because appellant has not established that the district court abused its discretion, and because the record affirmatively demonstrates that the exact opposite is true, this Court should reject appellant's challenge to the substantive reasonableness of the stay-away condition.

# CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney

ELIZABETH TROSMAN
GEORGE P. ELIOPOULOS
Assistant United States Attorneys

_____/s/_____
JASON B. FELDMAN
D.C. Bar #1023334
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Jason.Feldman@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 7,536 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
JASON B. FELDMAN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Edward C. Sussman, Esq., 601 Pennsylvania Avenue, NW, Suite 900 South Building, Washington D.C. 20004, on this 11th day of July, 2016.

/s/
JASON B. FELDMAN
Assistant United States Attorney

**Addendum of Statutes**

# INDEX

Page

18 U.S.C. § 3553 ................................................................... Add. 1

18 U.S.C. § 3583 ................................................................... Add. 6

Fed. R. Crim. P. 11 .......................................................... Add. 10

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part II. Criminal Procedure
      Chapter 227. Sentences (Refs & Annos)
        Subchapter A. General Provisions (Refs & Annos)

18 U.S.C.A. § 3553

§ 3553. Imposition of a sentence

Effective: May 27, 2010
Currentness

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.--**

**(1) In general.**--Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2) Child crimes and sexual offenses.--**

**(A)** [2] **Sentencing.**--In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless--

(i) the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

(ii) the court finds that there exists a mitigating circumstance of a kind or to a degree, that--

(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(III) should result in a sentence different from that described; or

(iii) the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of reasons for imposing a sentence**.--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

**(1)** is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons,

together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,, [3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice**.--Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall--

    **(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

    **(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

    **(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.**--Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on applicability of statutory minimums in certain cases.**--Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

    **(1)** the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

    **(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

    **(3)** the offense did not result in death or serious bodily injury to any person;

    **(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

**CREDIT(S)**

(Added Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub.L. 99-570, Title I, § 1007(a), Oct. 27, 1986, 100 Stat. 3207-7; Pub.L. 99-646, §§ 8(a), 9(a), 80(a), 81(a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub.L. 100-182, §§ 3, 16(a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub.L. 100-690, Title VII, § 7102, Nov. 18, 1988, 102 Stat. 4416; Pub.L. 103-322, Title VIII, § 80001(a), Title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub.L. 104-294, Title VI, § 601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub.L. 107-273, Div. B, Title IV, § 4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub.L. 108-21, Title IV, § 401(a), (c), (j)(5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub.L. 111-174, § 4, May 27, 2010, 124 Stat. 1216.)

Footnotes

1       So in original. The period probably should be a semicolon.
2       So in original. No subpar. (B) has been enacted.
3       So in original. The second comma probably should not appear.

18 U.S.C.A. § 3553, 18 USCA § 3553

Current through P.L. 114-181. Also includes P.L. 114-183.

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part II. Criminal Procedure
      Chapter 227. Sentences (Refs & Annos)
        Subchapter D. Imprisonment (Refs & Annos)

18 U.S.C.A. § 3583

§ 3583. Inclusion of a term of supervised release after imprisonment

Effective: May 29, 2015

Currentness

**(a) In general.**--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

**(b) Authorized terms of supervised release.**--Except as otherwise provided, the authorized terms of supervised release are--

**(1)** for a Class A or Class B felony, not more than five years;

**(2)** for a Class C or Class D felony, not more than three years; and

**(3)** for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

**(c) Factors to be considered in including a term of supervised release.**--The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

**(d) Conditions of supervised release.**--The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled

substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition--

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

**(e) Modification of conditions or revocation.**--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to

the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

**(3)** revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

**(4)** order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

**(f) Written statement of conditions.**--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

**(g) Mandatory revocation for possession of controlled substance or firearm or for refusal to comply with drug testing.**--If the defendant--

**(1)** possesses a controlled substance in violation of the condition set forth in subsection (d);

**(2)** possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;

**(3)** refuses to comply with drug testing imposed as a condition of supervised release; or

**(4)** as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

**(h) Supervised release following revocation.**--When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

**(i) Delayed revocation.**--The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

**(j) Supervised release terms for terrorism predicates.**--Notwithstanding subsection (b), the authorized term of supervised release for any offense listed in section 2332b(g)(5)(B) is any term of years or life.

**(k)** Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

**CREDIT(S)**

(Added Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1999; amended Pub.L. 99-570, Title I, § 1006(a)(1) to (3), Oct. 27, 1986, 100 Stat. 3207-6, 3207-7; Pub.L. 99-646, § 14(a), Nov. 10, 1986, 100 Stat. 3594; Pub.L. 100-182, §§ 8, 9, 12, 25, Dec. 7, 1987, 101 Stat. 1267, 1268, 1272; Pub.L. 100-690, Title VII, §§ 7108, 7303(b), 7305(b), Nov. 18, 1988, 102 Stat. 4418, 4419, 4464 to 4466; Pub.L. 101-647, Title XXXV, § 3589, Nov. 29, 1990, 104 Stat. 4930; Pub.L. 103-322, Title II, § 20414(c), Title XI, § 110505, Title XXXII, § 320921(c), Sept. 13, 1994, 108 Stat. 1831, 2016, 2130; Pub.L. 105-119, Title I, § 115(a)(8)(B)(iv), Nov. 26, 1997, 111 Stat. 2465; Pub.L. 106-546, § 7(b), Dec. 19, 2000, 114 Stat. 2734; Pub.L. 107-56, Title VIII, § 812, Oct. 26, 2001, 115 Stat. 382; Pub.L. 107-273, Div. B, Title II, 2103(b), Title III, § 3007, Nov. 2, 2002, 116 Stat. 1793, 1806; Pub.L. 108-21, Title I, § 101, Apr. 30, 2003, 117 Stat. 651; Pub.L. 109-177, Title II, § 212, Mar. 9, 2006, 120 Stat. 230; Pub.L. 109-248, Title I, § 141(e), Title II, § 210(b), July 27, 2006, 120 Stat. 603, 615; Pub.L. 110-406, § 14(b), Oct. 13, 2008, 122 Stat. 4294; Pub.L. 114-22, Title I, § 114(d), May 29, 2015, 129 Stat. 242.)

18 U.S.C.A. § 3583, 18 USCA § 3583
Current through P.L. 114-181. Also includes P.L. 114-183.

---

**End of Document**          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
    IV. Arraignment and Preparation for Trial

Federal Rules of Criminal Procedure, Rule 11

Rule 11. Pleas

Currentness

**(a) Entering a Plea.**

**(1) In General.** A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere.

**(2) Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

**(3) Nolo Contendere Plea.** Before accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice.

**(4) Failure to Enter a Plea.** If a defendant refuses to enter a plea or if a defendant organization fails to appear, the court must enter a plea of not guilty.

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1) Advising and Questioning the Defendant.** Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

**(A)** the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

**(B)** the right to plead not guilty, or having already so pleaded, to persist in that plea;

**(C)** the right to a jury trial;

**(D)** the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

**(E)** the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

**(F)** the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

**(G)** the nature of each charge to which the defendant is pleading;

**(H)** any maximum possible penalty, including imprisonment, fine, and term of supervised release;

**(I)** any mandatory minimum penalty;

**(J)** any applicable forfeiture;

**(K)** the court's authority to order restitution;

**(L)** the court's obligation to impose a special assessment;

**(M)** in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

**(N)** the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

**(O)** that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

**(3) Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

**(c) Plea Agreement Procedure.**

**(1) In General.** An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads

guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

    **(A)** not bring, or will move to dismiss, other charges;

    **(B)** recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or

    **(C)** agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

**(2) Disclosing a Plea Agreement.** The parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera.

**(3) Judicial Consideration of a Plea Agreement.**

    **(A)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

    **(B)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.

**(4) Accepting a Plea Agreement.** If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.

**(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

    **(A)** inform the parties that the court rejects the plea agreement;

    **(B)** advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

    **(C)** advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

**(d) Withdrawing a Guilty or Nolo Contendere Plea.** A defendant may withdraw a plea of guilty or nolo contendere:

**(1)** before the court accepts the plea, for any reason or no reason; or

**(2)** after the court accepts the plea, but before it imposes sentence if:

    **(A)** the court rejects a plea agreement under Rule 11(c)(5); or

    **(B)** the defendant can show a fair and just reason for requesting the withdrawal.

**(e) Finality of a Guilty or Nolo Contendere Plea.** After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

**(f) Admissibility or Inadmissibility of a Plea, Plea Discussions, and Related Statements.** The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.

**(g) Recording the Proceedings.** The proceedings during which the defendant enters a plea must be recorded by a court reporter or by a suitable recording device. If there is a guilty plea or a nolo contendere plea, the record must include the inquiries and advice to the defendant required under Rule 11(b) and (c).

**(h) Harmless Error.** A variance from the requirements of this rule is harmless error if it does not affect substantial rights.

**CREDIT(S)**

    (As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(5)-(10), 89 Stat. 371, 372; Apr. 30, 1979, eff. Aug. 1, 1979, and Dec. 1, 1980; Apr. 28, 1982, eff. Aug. 1, 1982; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 9, 1987, eff. Aug. 1, 1987; Nov. 18, 1988, Pub.L. 100-690, Title VII, § 7076, 102 Stat. 4406; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 29, 1999, eff. Dec. 1, 1999; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 16, 2013, eff. Dec. 1, 2013.)

Fed. Rules Cr. Proc. Rule 11, 18 U.S.C.A., FRCRP Rule 11
Including Amendments Received Through 6-1-16

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.